## FARROW v. WORK.

No. 3084.     Opinion Filed November 18, 1913.

(136 Pac. 739.)

1. **MORTGAGES—Deed as Mortgage—What Constitutes.** A deed absolute in form is, in fact, a mortgage when given to secure the payment of money, even though the parties may have agreed that, upon default in payment within a fixed time, the deed should become absolute.

2. **SAME.** Although a deed may be absolute on its face, if given merely as a security for debt, and is so intended by the parties, it will be held to be a mortgage, with the right of redemption.

3. **SAME.** Whether any particular transaction amounts to a mortgage, or a sale upon condition, or with agreement to reconvey upon a contingency, is to be determined by ascertaining whether the transaction was intended to secure a debt. If a debt remains, for which the conveyance is security, and the collection of which may be enforced independently of such security, the transaction is in law a mortgage, whatever language the parties may have used in expressing their agreement.

4. **APPEAL AND ERROR—Findings of Fact—Conflicting Evidence.** A finding of fact, which has been determined on conflicting evidence by the referee, and subsequently by the court, will not be disturbed in this court, where there is evidence reasonably supporting the finding.

5. **CHAMPERTY AND MAINTENANCE—Conveyances—Possession.** Under section 644, c. 27, Mansf. Dig., the Laws of Arkansas, put in force in the Indian Territory by Act of Congress of February 19, 1903 (32 St. at L. p. 841, c. 707), any person claiming title to real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest therein in the same manner and with like effect as if the land conveyed was in his actual possession.

(Syllabus by Sharp, C.)

*Error from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Action by Nathaniel F. Work against Martin T. Farrow. Judgment for plaintiff, and defendant brings error. Affirmed.

*Wilmott & Dean,* for plaintiff in error.

*Crump & Skinner,* for defendant in error.

Opinion by SHARP, C.   October 16, 1905, Eugene Walker and Dinah Walker, the latter a Seminole freedwoman, executed and delivered to E. S. Billington a warranty deed to 80 acres of land, located in Seminole county, and constituting a part of the allotment of the latter. The deed was of the usual form, and recited a consideration of $598.30. On the 20th day of March, 1906, said E. S. Billington, joined by his wife, Stella, executed a warranty deed to said land to the plaintiff in error, Farrow, which deed recited a cash consideration of $605. Thereafter, and during the month of May, 1906, said Eugene Walker and Dinah Walker, by warranty deed duly executed and delivered, attempted to convey said lands to the defendant in error, Work. On August 16, 1908, said Work brought suit, seeking to have the deed from the Walkers to Billington declared a mortgage, and the deed given by Billington to Farrow as an assignment of the said mortgage, and tendered to said defendant the sum of $625, being the amount, with interest, alleged to be owing by the Walkers to Billington, and for which, it was charged, the deed was given as security. Defendant's answer consists of a general denial. By agreement of the parties the case was referred to T. S. Cobb, as referee, with authority to take the testimony and report to the court both his findings of fact and conclusions of law. The report, thereafter made, contained, among other findings, the following:

"First, I find that on the 6th day of October, 1905, Eugene Walker and Dinah Walker made, executed, and delivered their warranty deed to E. S. Billington to the east half of the northwest quarter and the northeast quarter of the southwest quarter of section 35, township 10, range 5, save and except the 40-acre homestead of Dinah Walker therein included; that said

warranty deed purported to be executed for and in consideration of the sum of $598.30; that said deed was duly recorded on October 10, 1905, in the office of the recorder of deeds of the Thirteenth recording district of the Indian Territory, the district wherein said land lies, as required by law.

"Second. That said deed was in truth and in fact executed for the purpose of securing the payment to said E. S. Billington of the sum of $598.30 by Eugene Walker and Dinah Walker within 60 days from that date; that said deed was intended by the parties thereto as being given for the purpose of securing the payment of said sum of money; and that at the time said deed was executed it was agreed by the parties thereto that, in case said sum of money was paid within 60 days, that the land described in said deed should be by the said E. S. Billington reconveyed to said Eugene Walker and Dinah Walker. I therefore conclude as a matter of fact that said deed was and is a mortgage upon said land, securing the payment of said sum of money."

"Sixth. I find that C. W. Rodman, that V. R. Biggers, and that Sam Norton knew at the time the deed to said Farrow was executed and delivered that the deed to said Billington was given for the purpose of securing a lumber bill in the said sum of $598.30; that said Sam Norton was also the agent of said Martin T. Farrow, W. F. Evans, and the Canadian Valley Investment Company; and all persons who expected to profit by said deed to Farrow had knowledge and were informed that said deed to Billington was made for the purpose of securing a lumber bill in the sum of $598.30."

"Eighth. I find that the said deed from Billington to Farrow operated as an assignment of the mortgage and claim of Billington against said Eugene Walker and Dinah Walker, and that he got no greater right or title to said land than that held by said Billington."

In his conclusions of law, it was found by the referee that the deed from the Walkers to Billington should be decreed to be a mortgage to secure the payment of $598.30, which, with interest, then amounted to $625; that the deed from Billington to Farrow should be decreed to be an assignment of said mortgage and the debt thereby secured; that the plaintiff be required to pay into court said sum of $625 in satisfaction of the mortgage and debt; and that upon said payment the deeds from the Walkers to Billington and from Billington to Farrow

be canceled. The report, coming on to be heard before the court, was sustained, and a decree entered in conformity thereto.

Three errors are assigned in this court: (1) The finding of the referee that the deed executed by the Walkers to Billington was intended as a mortgage is not reasonably supported by the evidence. (2) The finding of the referee that Farrow bought with knowledge that the deed from the Walkers to Billington was intended as a mortgage, and not as a deed, is not reasonably supported by the evidence; but that, on the other hand, the said Farrow was an innocent purchaser for value. (3) Plaintiff in error being in possession under color of title of the lands at the time of the purchase from the Walkers by defendant in error, the latter's deed was champertous and void.

The first two questions involve a consideration of the evidence. It is contended by plaintiff in error that the deed from the Walkers to Billington evidences a conditional sale; that at the time Billington obtained the deed from them they were indebted to him on account for merchandise amounting to $598,-30; that the deed was executed in settlement of this indebtedness; that the agreement, however, was that, upon a repayment of said sum within a fixed time the grantee therein would reconvey said lands; but the Walkers, having failed to pay the amount of the original indebtedness within the time fixed, were without further rights in the premises.

On the part of the defendant in error, it was claimed that the deed from the Walkers to Billington was intended only to secure the payment of their indebtedness, the debt not being thereby extinguished, but, instead, that the relation of debtor and creditor continued to exist. In *Worley, Receiver, v. Carter,* 30 Okla. 642, 121 Pac. 669, a case also arising in the Indian Territory, we had occasion to consider the rules of law applicable to a deed, absolute on its face, intended merely as security for a debt and a conditional sale, and it was there said:

"A mortgage and a conditional sale differ materially; the latter is not a security for money, while the former is. 'A conditional sale is not a security for money, but is what its designation imports, namely, a sale in good faith, and a sale

on condition that the vendor may repurchase on certain terms, which must be strictly complied with. Of course, therefore, no equity of redemption is incident to such a sale, because, as it is not the design of the transaction to secure the payment of money, a court of equity has no ground to say the substantial object can as well be reached by the payment at a subsequent time, with interest, as by a prompt compliance with the conditions, nor does it follow that the party can thereby be put in *statu quo.'* Minor's Institutes, art. 329. In Pomeroy's Equity Jurisprudence, sec. 1193, defining the difference between a mortgage and a sale with a contract to repurchase, it is said: 'This criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language they may have used and whatever stipulations they may have inserted in the instruments. On the contrary, if no such relation whatsoever of debtor and creditor is left subsisting, then the transaction is not a mortgage, but a mere sale and contract of repurchase. The writing may show on their face that the relation of debtor and creditor still continues, and that its existence and consequences are contemplated by the parties, or they may entirely fail to show any such fact, and may consist simply of an absolute conveyance and of a naked agreement to reconvey. While in the former case parol evidence is clearly inadmissible to contradict the terms of the writing, and to destroy their necessary character as a mortgage, in the latter case extrinsic parol evidence is always admissible to show the real situation of the parties, the existence of a debt, * * * and the actual character of the instruments as constituting a mortgage. While each case must involve its own special facts, the following circumstances are regarded by the courts as important, and as throwing much light upon the real intent and nature of the transactions: The existence of a collateral agreement by the grantor to pay money; his liability to pay interest; where a debt existed antecedent to the conveyance, the surrender or can-

cellation of the evidence of such indebtedness, or the suffering them to remain outstanding and operative, or the substitution of others in their place; the price of the conveyance being inadequate; the grantor still' left in possession; an application or negotiation for a loan preceding or pending the transaction.' "

The opinion reviews numerous authorities, and correctly and fully announces the applicatory rule of law.  There being evidence reasonably tending to support the referee's findings of fact, it is not the province of this court on appeal to disturb the decree based upon said report.  Such findings of fact must be given the same conclusiveness as a verdict of a jury or the findings of fact by the court sitting as a jury.  *Hope v. Bourland,* 21 Okla. 864, 98 Pac. 580; *Richardson et al. v. Harsha,* 22 Okla. 405, 98 Pac. 897; *Town of Sapulpa et al. v. Sapulpa Oil & Gas Co.,* 22 Okla. 347, 97 Pac. 1007; *Locust et al. v. Caruthers et al.,* 33 Okla. 373, 100 Pac. 520.

Was the deed under which Work claims title champertous? It will be remembered that it was executed in the month of May, 1906, and that the land therein described was situated in what was then the Indian Territory.  Plaintiff in error cites, in support of his contention, *Huston v. Scott,* 20 Okla. 142, 94 Pac. 512, 35 L. R. A. (N. S.) 721; *Powers v. Van Dyke,* 27 Okla. 27, 111 Pac. 939, 36 L. R. A. (N. S.) 96; 6 Cyc. 883. The cases cited arose in Oklahoma Territory, and were governed by the statutes of that territory.  The section of Cyc. to which we are referred reads:

"Both at common law and under statutes adopting the common law or the statute of Henry VIII (32 Hen. VIII, c. 9), a conveyance of land, though by the rightful owner, while it is in the adverse possession of another claiming to be the owner thereof, is absolutely void as to the party in possession and his privies.  In those states, however, which have either never recognized the common-law rule or have abrogated it by a statute, such a conveyance is clearly valid."

Among the states abrogating by statute the common-law rule is Arkansas.  Section 644, Mansfield's Digest, at the time in force in the Indian Territory, by Act of Congress of February 19, 1903 (32 St. at L. p. 841, c. 707), provides: ,

"Any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest in the same manner and with like effect as if he was in the actual possession thereof."

Referring to the statute of that state, it was said, in *Drennen's Ad. et al. v. Walker et al.,* 21 Ark. 539, 546:

"The objections made to Walker's purchase, because it has resulted in a suit promoted by him, because he was a lawyer, and his vendors were not in possession of what they sold, and Drennen was in adverse possession, hardly need to be answered, as our statute allows a person to sell and convey his interest in real estate, though it be in the adverse possession of another."

We must look to the law in force at the time the deed was executed, and not to the statutes of Oklahoma, which did not become the law in that part of the state of which the Seminole Nation formed a part until November 16, 1907, the date of the admission of Oklahoma into the Union. *Purcell v. Barnett et al.,* 30 Okla. 605, 121 Pac. 23. It is clear from the statute mentioned that the deed from the Walkers to Work was not champertous.

Finding no error, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.